SHOCKLEY (Paul), by Guardian *ad litem*, Plaintiff: SHOCKLEY and wife, Plaintiffs and Appellants, v. PRIER, M.D. and others, Defendants and Respondents.

*No. 310. Argued October 30, 1974.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 495.)

For the appellants there were briefs by *Habush, Gillick, Habush, Davis & Murphy,* attorneys, and *Howard*

*A. Davis* of counsel, all of Milwaukee, and oral argument by *Howard A. Davis.*

For the respondents there was a brief and oral argument by *Irving W. Zirbel* of Milwaukee.

DAY, J.   The question raised on this appeal is, should a parent be permitted to recover damages for loss of the aid, comfort, society and companionship of a minor child who has been injured by the negligent acts of another?

This is an appeal by Benjamin Shockley and Marion Shockley, his wife (Shockleys), the parents of Paul Shockley, a minor, from an order of the trial court entered on May 30, 1973, sustaining the demurrer of the defendants Thomas A. Prier, M.D., Arthur W. Tacke, M.D., and The Medical Protective Company, their insurer, to that part of the complaint of the Shockleys alleging as a cause of action the loss of their minor son's aid, comfort, society and companionship as a result of injuries sustained by their son due to the negligence of Drs. Prier and Tacke and Milwaukee St. Joseph Hospital of Franciscan Sisters.

The complaint of Paul Shockley and his parents alleges that on July 23, 1971, Mrs. Shockley gave birth prematurely to twins at Milwaukee St. Joseph Hospital of Franciscan Sisters. Only Paul survived and was placed in a premature infant-care unit. The complaint alleges that due to the negligence of the defendants Paul was given excessive amounts of oxygen which caused retrolental fibroplasia, resulting in total and permanent blindness and disfigurement. The complaint sets forth a cause of action for damages sustained by the infant Paul. That portion of the complaint is not involved in this appeal. The complaint also sets forth as a cause of action by Paul's father that "he was deprived of his minor son's aid, comfort, society and companionship, and will in the future continue to be deprived of the same, to which

he is entitled . . ." A similar cause of action is set forth for Paul's mother.

It is that part of the complaint alleging damages for loss of aid, comfort, society and companionship to which Drs. Prier and Tacke and their insurer The Medical Protective Company demur on the ground the facts alleged do not state a cause of action.

The hospital and its insurer answered the complaint but did not demur and are not included in this appeal.

It is from the order sustaining the demurrer and dismissing those causes of action that plaintiffs Benjamin Shockley and Marion Shockley appeal.

Counsel for the plaintiffs stated at the time of oral argument that the complaint prayed for damages only for loss of Paul's aid, comfort, society and companionship during his minority. In his argument, counsel emphasized that it is only for the period of minority that the plaintiffs are seeking damages in this action. We therefore confine this opinion to the question of whether such damages are allowable to a parent during the minority of an injured child.

At the present time, by statute, a parent can recover for loss of society and companionship of a child in the case of wrongful death but only if there is no surviving spouse or unemancipated or dependent children of the deceased.[1]

There is no statute defining what damages may be recovered by a parent for injuries to a child. The law in that area is common law and was enunciated fifty years ago in the case of *Callies v. Reliance Laundry Co.*

---

[1] "895.04 **Plaintiff in wrongful death action.** . . .

"(4) Judgment for damages for pecuniary injury from wrongful death, and additional damages not to exceed $5,000 for loss of society and companionship, may be awarded to the spouse, unemancipated or dependent children or parents of the deceased. . . ."

(1925), 188 Wis. 376, 380, 206 N. W. 198. In that case, this court said:

". . . But when a minor child is injured by the negligence of another . . . the parent can recover (1) for loss of the minor's earning capacity during minority and (2) for reasonable medical and nursing expenses during minority."

The plaintiffs argue that the common law is a developing body of law which changes with the changing times and that the rule limiting recovery to the monetary loss sustained by a parent for an injured child harks back to the days when children were regarded as economic assets and no longer applies.

The defendants-respondents argue that if such a change is to be made, it should be made by the legislature and not by the court. This is an area where either this court or the legislature may act.

The rule against such recovery was created by the courts and not by the legislature and it is as much our responsibility, as the legislature's, to make changes in the law, if the common-law rule no longer fits the social realities of the present day. This court in recent years has made changes in the common law affecting personal injury actions as a result of changing concepts as to the relationship of members of the family to each other. Historically, the common law did not recognize the cause of action of a wife for loss of the consortium of her husband when caused by the negligent acts of a third party. The common law did recognize that a husband had a cause of action for the loss of consortium of his wife. This court in *Moran v. Quality Aluminum Casting Co.* (1967), 34 Wis. 2d 542, 551, 552, 150 N. W. 2d 137, declared for the first time that a woman could maintain an action for loss of her husband's consortium.

In *Moran* this court stated, page 547:

"As explained in *Montgomery v. Stephan . . .* [(1960), 359 Mich. 33, 40, 101 N. W. 2d 227] a recent decision by the Michigan supreme court:

" 'This, then, is the soil in which the doctrine took root; the abject subservience of wife to husband, her legal nonexistence, her degraded position as a combination vessel, chattel, and household drudge whose obedience might be enforced by personal chastisement.'

"Obviously the historical milieu in which the doctrine originated has changed completely. Nevertheless, despite obvious changes in the social, economic and legal status of women, the common-law doctrine allowing the husband a right of action for loss of consortium, but denying the wife a reciprocal action, was uniformly adhered to by the courts until 1950."

Our court then went on to say, pages 551, 552:

"The genius of the common law is its ability to adapt itself to the changing needs of society. Because the bases on which the old common-law rule which denied to the wife the right of recovery for loss of her husband's consortium rest on historical concepts which long ago disappeared, we deem the rule of *Nickel v. Hardware Mut. Casualty Co.* should be overruled . . . ."

In 1963 this court abrogated the parental-immunity rule in negligence cases (except in two limited situations) and thereby changed what had been the common-law rule until then that a child could not sue a parent for damages resulting from the negligent acts of the parent. This court in *Goller v. White* (1963), 20 Wis. 2d 402, 412, 413, 122 N. W. 2d 193, stated:

"This court seriously considered the advisability of abrogating the parental-immunity rule in negligence actions when *Schwenkhoff v. Farmers Mut. Automobile Ins. Co.* . . . [(1960), 11 Wis. 2d 97, 104 N. W. 2d 154] was before us. We then concluded that the legislature's recent action in rejecting legislation that would have abolished the immunity foreclosed this court from so doing. In so concluding we adhered to the long-established judicial policy of not overruling our past decisions where the legislature had acted in the matter.

This included the situation where the legislature had defeated a bill that had proposed changes in a rule of law laid down by court decision. Subsequently, this policy was completely overturned in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618. We there held that it was our responsibility to change a court-made rule of law when we deemed the change necessary in the interests of justice even though the legislature had refused to make the change. Thus the reason advanced in the *Schwenkhoff Case* for not changing the parental-immunity rule no longer applies."

In the majority of family situations, children are no longer an economic asset but on the contrary are usually sources of great expenditure on the part of parents. Wisconsin's lowering of the age of majority from twenty-one to eighteen years has made the possibility of a parent acquiring the earnings of a minor child even more remote.

In an article in 43 Washington Law Review (1968), 654, entitled *Wrongful Death of a Minor Child: The Changing Parental Injury*, the author points out, pages 655, 656, 668:

"Honest application of a pecuniary standard does not, in today's world, allow adequate recovery for child-death. The cost-accounting technique for measuring damages—value of services less cost of support—is archaic in a society which is not structured on child labor and the family chore framework of an agricultural community. . . .

"Tort law seeks to compensate injuries as those injuries are understood in light of changing social and economic conditions. . . .

". . . both court and legislature have recognized that today the injury sustained by a parent on the death of his child is not primarily economic. The law recognizes an interest in emotional and mental well-being. If this is the primary interest invaded when a parent loses his minor child, tort law should look to that injury, and fashion an appropriate remedy."

What is said with respect to parental loss in the event of death of a child is equally true in the case of injury. Our wrongful death statute already recognizes the loss of society and companionship as an element of damages in the case of death. It seems reasonable to recognize this same type loss where there has been injury to a minor child.

In 7 Family Law Quarterly (1973), 211, published by the American Bar Association, Professor Sanford N. Katz and Messrs. William A. Schroeder and Lawrence R. Sidman, in an article entitled *Emancipating Our Children—Coming of Legal Age in America,* point out, pages 212, 214, 215, 224, 225:

"In colonial America children occupied the lowest rungs of the social ladder. Various enactments of the Massachusetts Bay Colony suggest that children and servants were treated similarly before the law and were subject to the harshest punishments for relatively trivial offenses. Apprenticeship 'was often merely a specialized form of servitude.' Children owed the strictest obedience toward parents and were expected to assume completely subservient positions within the family unit. Since child labor was crucial to the economic system, the parental right to a minor child's services and wages was also a practical necessity. . . .

". . . [U]nder a heritage of the past, the parent is also entitled to the child's services and, by derivation, to his or her earnings.

". . . Due to a changed economic climate and altered perceptions of the parent-child relationship, the predominant cultural expectation is increasingly that the child be allowed to keep his or her earnings and decide how to expend them. Indeed, actions for recovery of a child's wages have become something of a rarity. Nevertheless, collateral actions for loss of a child's time and impairment to his or her earning capacity are still brought by parents."

The "remedy" of loss of minor's earning capacity during minority is of diminishing significance. Since

our court last laid down the rule in 1925, the family relationship has changed. Society and companionship between parents and their children are closer to our present-day family ideal than the right of the parents to the "earning capacity during minority," which once seemed so important when the common law was originally established.

In the case at bar one needs little imagination to see the shattering effect that Paul's blindness will have on the relationship between him and his parents. The loss of the enjoyment of those experiences normally shared by parents and children need no enumeration here.

We conclude that the law should recognize the right of parents to recover for loss of aid, comfort, society and companionship of a child during minority when such loss is caused by the negligence of another.

Defendants point out that several states have declined to create a cause of action for loss of a child's society and companionship. These states include Alabama, New York, North Dakota, Pennsylvania, Mississippi, Rhode Island, and New Jersey.[2]

One of the cases called to our attention by the defendants is *McGarr v. National & Providence Worsted Mills* (1902), 24 R. I. 447, 460, 53 Atl. 320, 325, 326. The Supreme Court of Rhode Island in denying a mother the right to recover for loss of the society and comfort of her injured daughter said:

---

[2] *Smith v. Richardson* (1965), 277 Ala. 389, 171 So. 2d 96; *Gilbert v. Stanton Brewery* (1946), 295 N. Y. 270, 67 N. E. 2d 155; *Kalsow v. Grob* (1931), 61 N. D. 119, 237 N. W. 848; *Quinn v. City of Pittsburgh* (1914), 243 Pa. 521, 90 Atl. 353; *Butler v. Chrestman* (Miss. 1972), 264 So. 2d 812; *McGarr v. National & Providence Worsted Mills* (1902), 24 R. I. 447, 53 Atl. 320; *Ekalo v. Constructive Service Corp. of America* (1965), 46 N. J. 82, 215 Atl. 2d 1; *Brennan v. Biber* (1966), 93 N. J. Super. 351, 225 Atl. 2d 742, affirmed (1968), 99 N. J. Super. 247, 239 Atl. 2d 261.

"In short, the measure of damages in such a case is the same as that which obtains in a case brought by a master for the loss of services of his servant or apprentice. It is therefore practically a business and commercial question only, and the elements of affection and sentiment have no place therein."

We submit that today's relationship between parents and children is, or should be, more than that between master and servant.

We are persuaded by the reasoning of those courts which have permitted recovery. In *Lockhart v. Besel* (1967), 71 Wash. 2d 112, 117, 426 Pac. 2d 605, 609, the Washington Supreme Court, in construing a Washington statute allowing an action for injury or death of a child,[3] held that "the measure of damages . . . should be extended to include the loss of companionship of a minor child during his minority . . . ." The case involved the wrongful death of a child. The court went on to say at page 117:

". . . economic conditions and our way of life have so significantly changed that to say the pecuniary value of the loss of a minor child's services over and above his cost of support and maintenance, except in rare cases, is not a pure fiction can no longer be ignored."

The statute was amended shortly thereafter to reflect the holding of the *Lockhart Case*.[4] *See also: Stephens v.*

---

[3] Washington Revised Code, sec. 4.24.010 (1965):

"A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support."

[4] "Ch. 81, Wash. Laws Ex. Sess. 1967. Wash. Rev. Code sec. 4.24.010, as amended, provides:

" 'A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury

*Weigel* (1948), 336 Ill. App. 36, 82 N. E. 2d 697; *Hayward v. Yost* (1952), 72 Idaho 415, 242 Pac. 2d 971.

There are presently two standard jury instructions which could serve as models for a proper instruction as to damages for the loss of aid, comfort, society and companionship of an injured minor child.[5]

The right recognized in this decision may be enlarged by the legislature, as was done by the Washington legis-

---

or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support.'

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just." 43 Wash. L. Rev. (1968), 657, *et seq.*

[5] Wis J I—Civil: "1895 Death of Child: Parent's Loss of Society and Companionship

"Subdivision ——— of Question ——— makes inquiry as to what sum will reasonably compensate the plaintiff *(father) (mother)* for loss of society and companionship of the child.

"You will carefully consider all of the credible evidence and reasonable inferences therefrom, bearing on this inquiry, and in answer, name such sum as will fairly and reasonably compensate *(him) (her)* for the loss of the society and companionship of *(his) (her)* deceased *(son) (daughter)*.

"You should take into consideration the ages of both the deceased child and the parent. You should also consider the relationship of the parent and the child; the love and affection and conduct of each towards the other; the society and companionship that was afforded to the parent by the child; the personality, disposition, and character of the child; the disposition and susceptibility of the parent to suffer from such loss; and name an amount which will in your judgment reasonably compensate the parent for such loss as *(he) (she)* sustained by being deprived of such society and companionship as the child afforded *(him) (her)* during *(his) (her)* lifetime and which you are reasonably certain would have continued during the natural life of the parent except for the death of the child."

lature following the decision in *Lockhart v. Besel, supra,* or it may abolish the cause of action or may limit the amount recoverable, as it has in the wrongful death statute.

In summary, this court concludes that a parent may maintain an action for loss of aid, comfort, society and companionship of an injured minor child against a negligent tort-feasor provided, and on condition, that the parent's cause of action is combined with that of the child for the child's personal injuries. In the case at bar, the plaintiff-parents' cause of action is joined with that of the child for his injuries. *Moran v. Quality Aluminum Casting Co., supra,* page 558.

The change in the rule announced in this opinion is to be limited to causes of action arising on or after February 4, 1975, the date of the filing of this opinion,

---

Wis J I—Civil: "1816 **Injury to Husband: Services, Society, and Companionship: Past and Future**

"In answer to Question ———— with respect to loss of services, society, and companionship of her husband, you should name such sum as you feel will fairly and reasonably compensate (name) for such loss as she has sustained by being deprived of his aid, assistance, comfort, society and companionship during such period as he was unable to render such services because of his injuries. In considering the amount to be awarded, you will bear in mind the evidence as to the relationship which existed between the husband and wife before his injury.

"If you are satisfied to a reasonable certainty that for any appreciable time in the future he will be unable to render such services and/or provide such society and companionship, you should make a proper allowance therefor for the period such disability will exist.

"You will not include in your finding any sum, which you are required to determine in any other question, representing loss of earning capacity sustained by (name), the husband, by reason of his injuries. To do so would be to allow double damages for such loss of earning capacity, which you must not do."

except that it is to be applicable to the instant case. *Goller v. White, supra,* page 415.

*By the Court.*—Order reversed, with costs to the appellants.