HARTRIDGE, Plaintiff-Appellant, v. STATE FARM MUTUAL
   AUTOMOBILE INSURANCE COMPANY, and another,
   Defendants-Respondents.

### Supreme Court

*No. 76–288.  Argued October 30, 1978.—*
*Decided November 28, 1978.*
(Also reported in 271 N.W.2d 598.)

For the appellant there was a brief by *Daniel G. Sandell* and *Johnson, Bieber & Swingen* and oral argument by *William E. Johnson* of Madison.

For the respondents there was a brief by *Boardman, Suhr, Curry & Field* and oral argument by *Bradway A. Liddle, Jr.*, of Madison.

BEILFUSS, C. J. This is an action to recover lost profits brought by Dr. T. L. Hartridge, assignee of Jackson Clinic, a medical clinic located in Madison, Wisconsin. The claim arises out of a two-car automobile accident on April 23, 1973. The plaintiff Hartridge, then a working member of the clinic, was injured in this accident.

An initial action was brought on September 27, 1974, by plaintiff and others against the driver of the second automobile, Harold Coakley. Liability of the defendant Coakley was conceded. Jury trial as to damages resulted in an award of $35,525.34, which amount included an $8,000 award for Dr. Hartridge's loss of earnings up to the time of his retirement.

On July 31, 1975, the Jackson Clinic assigned to Hartridge any claim it might have against Coakley as a result of the accident. Sometime thereafter and subsequent to the jury verdict in the first action, Hartridge, as assignee of his former employer, commenced this action against Harold Coakley and his insurer, co-respondents in this appeal.

Summons and complaint were timely served on the parties. The complaint alleged that the Jackson Clinic, which derives its income solely from a percentage contribution drawn from the earnings of its member physicians, sustained an income loss as a result of defendant's negligent conduct because Dr. Hartridge's injuries prevented him from contributing to the clinic to the same extent as before the accident. The amount of the loss or damage claimed was $8,000.

The issue before us is whether the trial court erred in ruling that the plaintiff-appellant failed to state a cause of action upon which relief could be granted. This procedural question in turn is answered by the question of whether an employer has a claim for relief for loss of earnings suffered by it due to a negligent injury to its employee.

Defendants' motion to dismiss this action was brought under sec. 802.06(2), Stats. The Judicial Council Committee's Note, 1974, on the statute declared that the motion to dismiss for failure to state a claim upon which relief could be granted under this section replaced the demurrer for failure to state facts sufficient to constitute a cause of action under sec. 263.06(6). *See* sec. 802.06, Wis. Stats. Annot. (1977), p. 597.

The standards a trial court is to apply in ruling on demurrers is firmly established. The rules were recently summarized by this court in *International Found. Emp. Benefit Plans v. Brookfield,* 74 Wis.2d 544, 548, 247 N.W.2d 129 (1976):

"The demurrer tests only the legal sufficiency of the pleading. All material statements of fact well-pleaded are considered true while legal conclusions or erroneous conclusions from the facts as pleaded are not. *Val-Lo-Will Farms v. I. Azoff & Asso.,* 71 Wis.2d 642, 238 N.W. 2d 738 (1976); *Drake v. Milwaukee Mut. Ins. Co.,* 70 Wis.2d 977, 236 N.W.2d 204 (1975); *De Bauche v. Knott,* 69 Wis.2d 119, 230 N.W.2d 158 (1975); *Scheeler v. Bahr,* 41 Wis.2d 473, 164 N.W.2d 310 (1969). A demurrer to a complaint admits the facts which are well-pleaded but denies that they have the legal consequences asserted by the plaintiff. *Scheeler, supra,* 476.

". . . The plaintiff is bound by the facts he alleges but not by his theory of recovery. *Val-Lo-Will Farms, supra,* 644; *Milwaukee County v. Schmidt, Garden & Erikson,* 43 Wis.2d 445, 168 N.W.2d 559 (1969); *Nelson v. La Crosse Trailer Corp.,* 254 Wis. 414, 37 N.W.2d 63 (1949)."

In *State v. Ross,* 73 Wis.2d 1, 3, 4, 242 N.W.2d 210 (1976), we stated:

"The rules relating to review of orders overruling or sustaining demurrers were set forth by this court in *Weiss v. Holman* (1973), 58 Wis.2d 608, 614, 207 N.W.2d 660:

" '. . . The following oft reiterated rules relating to review of orders overruling or sustaining demurrers are applicable: (1) Pleadings are to be liberally construed with a view to substantial justice between the parties and are entitled to all reasonable inferences in favor of the pleadings which may be drawn from the facts pleaded; (2) all material well-pleaded facts are to be taken as true; . . .' "

Since motions to dismiss under sec. 802.06(2), Stats., serve basically the same purpose as demurrers, the preceding rules on demurrers are equally relevant to matters involving sec. 802.06(2) motions and should be held to apply to them. It is not the function of this court on review to consider whether the $8,000 lost profits can be proved or whether the assignment to Dr. Hartridge is valid under the circumstances, but rather whether the facts alleged, if they were proved, state a claim upon which relief can be granted.

We conclude that the complaint does not state facts or a cause of action upon which relief can be granted, and affirm the judgment dismissing the complaint.

The plaintiff equates the Jackson Clinic's claim for recovery of lost income due to Dr. Hartridge's injury with the right of a master at common law to maintain an action against a tortfeasor for damages sustained on account of loss of services of an injured servant. For support he points to other situations where one person standing in certain special legal relationships—parent/child, husband/wife, for example—has a right created by common law to seek recovery for loss of the benefit of

the relation due to negligent injury of the other party to the relation. *Cf., Moran v. Quality Aluminum Casting Co.,* 34 Wis.2d 542, 150 N.W.2d 137 (1967), allowing recovery to both husbands and wives for injury to their spouses which interfered with the marital relationship; and *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495 (1975), allowing parents to recover damages for loss of the benefit of their relationship with an injured child.

The roots of the English common-law rule which permitted an action by a master for loss of a servant's services extend deep into legal history. Its origin was probably the principle of Roman law which allowed the head of a family to sue for physical harm done to one of his household, either family member or slave. *Cf., Wampler v. Palmerton,* 439 P.2d 601 (Oregon 1968).

We have found no Wisconsin cases which reveal to what extent Wisconsin has followed the early common-law rule. The plaintiff advances isolated cases from other jurisdictions in which the rule was applied and allegedly extended to a more traditional employer-employee situation. The cases are few, unpersuasive in their reasoning, and—were they binding on this court—distinguishable from the present case on their facts.

The plaintiff's claim for recovery of lost income rests on a common-law foundation. The genius of the common law is its ability to adapt to changing economic and social conditions. *Shockley, supra,* at 399. The original social value of an action, however, worthy and significant, cannot operate to justify its continued existence in different times and under changed social circumstances. For this reason the historical pedigree, albeit old and long, of the action by a master for loss of his servant's services is insufficient authority on which to base a decision affirming its continued viability in the context of modern employment relations. The critical question is not whether the cause of action for which plaintiff argues once

existed, but rather whether present circumstances and progressive social policy recommend its continued existence. This precise question was the subject of a recent law review article. The author's analysis is persuasive:

"Master and servant is one of the oldest of personal relations and, in the case of family relations, one who interfered with it intentionally or negligently without excuse, became subject to liability. . . In the days of the cottage industry when there were many servants in the home, the bonds between master and servant were strong and it was proper to regard the interests of the master and parent as property interests for which the action of trespass was proper.

"It is quite clear today that the relation of master and servant no longer represents the close bond which it once did. It is equally clear that a servant no longer regards himself as his master's man, but as an independent person who can bargain effectually. There is no longer anything which even remotely resembles what was formerly thought of as the status of a servant. Although there is still a fiduciary relation, the bond is primarily contractual with rights and duties in many cases spelled out in great detail. Bearing in mind, therefore, the great difference between the modern industrial servant and the servant in the early centuries of the English common law, the question arises whether the liability placed upon a person who negligently harms a servant should continue in view of the change in the relation.

"It is seldom that an interest which has been protected by the law loses its protection. But if the interests of the master in the services of the servant are different in kind from what they were centuries ago, it is not improper to withdraw the protection which was once afforded." Warren A. Seavey, *Liability to Master for Negligent Harm to Servant,* 1956 Wash. U. L. Q. 309, 310, 311.

The historic common-law right of a master to recover for loss of services due to a servant's injury by a negligent third party contemplated a quasi-familial relation-

ship which does not exist between a modern-day employer and his employee. The action, however valid in feudal societies, is out of place in modern times. It is a carry-over from an earlier day, ill-adapted to current social and economic realities, and should not be recognized under Wisconsin law as a viable foundation upon which to base a claim for recovery of lost earnings by an employer on account of negligent injury to his employee. Its application to the normal present-day employer-employee relationship is repudiated.

Harper has said "[s]ince most important economic relations are controlled by contract . . . it is of the highest social importance to preserve the integrity of contractual relations." Harper, *Interference With Contractual Relations*, 47 Nw. U. L. Rev. 873 (1953) ;. 1 Harper & James, *Torts*, p. 490, sec. 6.5 (1956). However, most authorities, including Harper, conclude that to be actionable, interference with a contract must be intentional. As a general rule no recovery is allowed for damages caused by negligent interference with contractual relations.[1]

This general principle has been adopted and adhered to in Wisconsin. *Mendelson v. Blatz Brewing Co.*, 9 Wis. 2d 487, 101 N.W.2d 805 (1960), made it clear that under Wisconsin law intention is an essential element of a claim for damages sustained as a result of contractual interference.[2]

In *Augustine v. Anti-Defamation League of B'nai B'rith*, 75 Wis.2d 207, 249 N.W.2d 547 (1977), this court addressed the specific question of interference with an employment contract. The case involved an action by a radio announcer against the Anti-Defamation League for allegedly causing his employment contract to be termi-

---

[1] Prosser, *Torts* (4th ed. 1977), p. 938, sec. 129.

[2] *See also Flood v. Margis*, 322 F. Supp. 1086 (D.C.E.D. Wis. 1971).

nated through protests and complaints regarding the offensive content of the announcer's program. The opinion, reviewing the principles set forth in Restatement, *Torts,* reaffirmed the general rule, *supra,* pp. 219–220:

"It is thus obvious, even under the original version of sec. 766, that the purpose must be an intentional one. The revised Restatement, which has been in effect since its adoption by the American Law Institute in 1969, makes it even clearer that the alleged tortfeasor's conduct must be intentional. The 1969 version of sec. 766 provides:
" 'Sec. 766 *Intentional interference with contract*
" '(1) One who *intentionally* induces or otherwise *intentionally* causes a third person not to perform a contract with another, other than a contract to marry, is subject to liability to the other for pecuniary loss resulting from the breach of contract.' (Emphasis supplied.)
"The revised comments of the 1969 version emphasize that it is not sufficient that the contract be interfered with, even though the conduct of the alleged tortfeasor might have incidentally had that result. Only if the actor intentionally causes the nonperformance can liability follow."

There is nothing in the present case which argues for the relaxation of the general rule, reaffirmed in *Augustine v. Anti-Defamation League, supra,* refusing recovery for mere negligent interference with contractual relations.

Tort law seeks to compensate injuries as those injuries are understood in light of changing social and economic conditions.[3] The policy of Wisconsin tort law, a liberal one, is to compensate those who are injured by negligent acts.

The overriding consideration in the present case, regardless of the label put on the cause of action, is whether

---

[3] *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495 (1975); *Conklin v. Horner,* 38 Wis.2d 468, 157 N.W.2d 579 (1968).

damages for economic losses of the kind asserted by plaintiff should be allowed or whether the liability imposed on defendants for their negligent act should be more narrowly circumscribed. Resolution of this issue requires identification and application of current public policy values to the instant facts. This is solely a function of the court. *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 240, 55 N.W.2d 29 (1952).

Courts have traditionally employed certain concepts—duty, foreseeability, proximate cause—to limit the legal consequences of one's negligence. Wisconsin, however, has abandoned this practice of using arbitrary labels to justify limiting liability once negligence has been established. Wisconsin's position on duty is the view of the minority in *Palsgraf v. Long Island R. R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928), recently rephrased by this court in *Schilling v. Stockel,* 26 Wis.2d 525, 531, 133 N.W.2d 335 (1965):

"Duty is still an important factor in determining whether an act is negligent. *E.g., Szep v. Robinson* (1963), 20 Wis.(2d) 284, 121 N.W.(2d) 753. However, once an act has been found to be negligent, we no longer look to see if there was a duty to the one who was in fact injured."

As was succinctly stated in *A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 483, 214 N.W.2d 764 (1974)—"The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." Foreseeability and proximate cause are viewed in a similarly practical fashion. *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 182, 77 N.W.2d 397 (1956), is the most frequently cited expression of this approach:

"... it is not necessary in order for an act to be negligent that the actor should reasonably have foreseen the particular injury which did result from such act so long as he should have foreseen that harm was likely to be caused to someone by reason thereof; and, once negligence has been established, foreseeability is not an element of proximate cause. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N.W.(2d) 29. The classic statement of this principle is that appearing in the opinion of Mr. Justice MITCHELL in *Christianson v. Chicago, St. P., M. & O.R. Co.* (1896), 67 Minn. 94, 97, 69 N.W. 640, as follows:

" 'Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury approximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow.' "

This is not to imply that once it is determined a party was negligent, and this negligence was a substantial factor in causing the injury, liability will necessarily follow in all cases. However, the denial of liability, once negligence is found, is better defined as a public policy choice rather than as a matter of duty, foreseeability or proximate cause. As this court declared in *Hass v. Chicago & North Western Ry. Co.*, 48 Wis.2d 321, 326, 179 N.W. 2d 885 (1970) : "... negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy."

This court has identified several situations in which liability, although imposable, will not be imposed. Most recently in *Coffey v. Milwaukee*, 74 Wis.2d 526, 541, 247 N.W.2d 132 (1976), it was declared:

"Thus this court has held that even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point."[4]

Denial of recovery in the particular circumstances of the present case, indeed in the broad class of cases involving negligent interference with an employment contract, could be justified on any one of the above public policy grounds.

As to various rationales suggested by the parties, we conclude the early common-law action by a master for loss of a servant's services should not be extended to include the normal present-day employer-employee relationship. While tort law allows actions for negligent interference with certain familial relational interests, the modern relational between employer and employee, no longer a quasi-familial one, should not be honored with

[4] *See also Colla v. Mandella*, 1 Wis.2d 594, 85 N.W.2d 345 (1957); *Hass v. Chicago & North Western Ry. Co.*, 48 Wis.2d 321, 179 N.W.2d 885 (1970); *A. E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764 (1974); *Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974).

such protection. In addition, factors considered by the court in determining whether to deny liability on public policy grounds weigh heavily against allowing recovery by an employer for negligent injury of his employee. The general rule that interference with contractual relations must be intentional to be actionable should also be maintained. Under none of the theories discussed, has the plaintiff stated facts upon which relief could be granted.

*By the Court.*—Judgment affirmed.