JOSEPH W., Plaintiff-Appellant,

THOMAS W., and Susan W., Plaintiffs-Co-Appellants,

v.

CATHOLIC DIOCESE OF MADISON, Defendant-Respondent,

Father Michael TRAINOR, Defendant,

ST. THOMAS ACQUINAS CHURCH, Defendant-Respondent.

Court of Appeals

*No. 96–2220. Submitted on briefs February 10, 1997.—Decided August 21, 1997.*

(Also reported in 569 N.W.2d 795.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert L. Elliott* and *Timothy J. Cesar* of *Hausmann-McNally, S.C.* of Milwaukee.

On behalf of the plaintiffs-co-appellants, the cause was submitted on the briefs of *Jonathan P. Bruni* of *Wendel & Center* of Madison.

On behalf of the defendants-respondents, the Roman Catholic Diocese of Madison, Inc. and St. Thomas Acquinas Church, the cause was submitted on

the briefs of *Donald L. Heaney, Kenneth B. Axe* and *Peter A. Martin* of *Lathrop & Clark* of Madison.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J. Joseph W. and his parents, Thomas and Susan W., sued Father Michael Trainor, the Catholic Diocese of Madison, and St. Thomas Aquinas Church, alleging that as a child Joseph was sexually abused by Father Trainor.[1] Their complaints alleged an intentional tort against Father Trainor and various claims of negligence against the Diocese, St. Thomas and Father Trainor. Joseph and his parents appeal from the trial court's dismissal of all their claims on the ground that they are barred by the statute of limitations. Because the appeal as to Father Trainor was dismissed as untimely, this appeal concerns only the claims against the Diocese and St. Thomas.[2] Based on the recent supreme court decision, *John B.B.B. Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94 (1997),[3] we conclude that Joseph's claims accrued when the last of the assaults occurred and therefore were not timely filed. We also conclude that the claims of Thomas and Susan were not

---

[1] Thomas and Susan W. filed their own complaint, and the court granted their motion to intervene in the action begun by Joseph.

[2] We dismissed the appeal as to Father Trainor by order dated May 28, 1997.

[3] After this appeal was submitted for decision, we issued an order placing it on hold pending the supreme court's decision in *John B.B.B. Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94 (1997).

928

timely filed because their claims accrued when Joseph's claims accrued. We therefore affirm.[4]

## BACKGROUND

Because this case comes to us following the grant of summary judgment, we present the facts in the light most favorable to Joseph and his parents. Joseph was born on June 2, 1970. He began attending St. Thomas Church in 1980 or 1981, where Father Trainor was a priest. St. Thomas did not operate a school but did have religious education classes, which Joseph attended. Father Trainor sexually assaulted[5] him on numerous occasions during 1983 and the first part of 1984. Joseph did not tell anyone about this at the time. Father Trainor told Joseph that if he told anyone, no one would believe him. Joseph thought about telling his parents but did not because he did not know how they would react.

---

[4] Case No. 96–2220 was originally consolidated with Case No. 97–0562. Case No. 97–0562 was disposed of by order dated May 28, 1997.

[5] In the context of civil torts, assault is defined as essentially a mental rather than a physical invasion. It is the apprehension of a harmful or offensive contact with a person. W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 10, at 43 (5th ed. 1984). Battery is defined as a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such contact, or apprehension that such a contact is imminent. Id. § 9 at 39. "Sexual assault" in our criminal code is defined as sexual contact or intercourse with another person, without the consent of that person. See § 940.225, STATS. We understand Joseph's civil claims of sexual assault to mean a sexual battery, and not mental invasion. See John B.B.B. Doe v. Archdiocese of Milwaukee, 211 Wis. 2d 312, 320, 565 N.W.2d 94, 96 (1997).

Father Trainor had sexually abused other boys since 1977 at various diocesan parishes where he was assigned. While a priest at St. Thomas, Father Trainor sexually abused four boys besides Joseph during the early 1980's. Two of those boys, Tim. M. and Brice M., talked to each other about the abuse and decided to tell their parents. They did so in the spring of 1984, and Brice's father contacted Father Michael Burke at Holy Name Seminary, who notified Bishop Cletus O'Donnell. When the parents of Tim and Brice met with the bishop and Father Burke, they gave the bishop the names of three other boys whom, they believed, Father Trainor had abused before coming to St. Thomas. A few days later, the bishop told the two boys' parents he had talked to Father Trainor, who at first denied the allegations but then admitted "there were lots." Bishop O'Donnell immediately removed Father Trainor from St. Thomas in May of 1984.

Joseph never saw Father Trainor after Father Trainor left St. Thomas. Although his parents discussed Father Trainor's absence, he did not tell them what Father Trainor did to him. Joseph saw a number of health professionals over the years after the assaults, but he never told them, or anyone, because he was ashamed and frightened. He did not forget about it but because it was so stressful for him to think about that he tried to think about it as little as possible. The first time Joseph told anyone was in a conversation with his uncle in early 1994; he stated at that time only that he had been abused. Soon afterwards, he told his wife and his parents. It was the opinion of a licensed psychologist that, "given the totality of what had occurred in [Joseph's] life up to 1994, he could not reasonably have been expected to make inquiries prior to that time with regard to the nature of any injuries he

incurred as a result of the sexual assaults by Michael Trainor, the cause of those injuries or Trainor's or anyone else's part of the cause."

Joseph's parents did not learn he had been assaulted by Father Trainor until the spring of 1994 when Joseph told them. After the beginning of Joseph's association with Father Trainor, his parents observed that he underwent intense personal suffering, withdrew from his family and made three suicide attempts. During Joseph's middle and high school years, his mother repeatedly spoke to the director of religious instruction at St. Thomas about the emotional pain Joseph was experiencing, including the suicide attempts, and the resulting turmoil for the family. Neither the Diocese, St. Thomas, nor their agents, ever told Joseph's parents that Father Trainor had sexually abused children while at St. Thomas or that Joseph's difficulties were consistent with the behavior of children who had been sexually abused.

In an effort to discover the reasons for their son's unhappiness, his parents consulted with and had their son tested by numerous professionals, beginning in 1983, but none of those efforts revealed that Joseph had been sexually abused. His parents blamed themselves for their son's condition and sought professional help for their own emotional distress.

Joseph filed suit on or about April 11, 1994, seeking compensatory and punitive damages. He alleged claims against the Diocese and St. Thomas for negligent placement, retention and supervision; liability under the doctrines of respondeat superior and apparent authority; and failure to report the abuse to authorities under § 48.981, STATS. Thomas' and Susan's amended complaint alleged these claims: (1) negligence in failing to prevent molestation of Joseph;

(2) negligent supervision of Father Trainor; (3) negligent infliction of emotional distress on them; (4) negligence in failing to report under § 48.981 , which would have resulted in a third-party investigation and therapeutic intervention; (5) negligence in failing to prevent further harm to Joseph and his family by investigating in May 1984 and thereafter to determine other victims and inform their parents so as to permit therapeutic intervention for Joseph and his parents; and (6) negligence by the director of religious instruction in failing to inform Joseph's parents in the years following Father Trainor's removal that Joseph had most likely been abused by Father Trainor, when the director knew or reasonably should have known that, thereby preventing therapeutic intervention for Joseph and his parents.[6] The amended complaint also alleges Thomas' and Susan's medical expense and loss of Joseph's society and companionship due to their son's withdrawal and emotional suffering, all proximate results of the assaults.

The trial court granted the Diocese's and St. Thomas' motion for summary judgment on statute of limitations grounds, dismissing all of Joseph's and his parents' claims against them. The court concluded that Joseph knew the identity of the perpetrator and was aware that what had occurred was wrongful, harmful and not sanctioned by the Catholic Church. His claims therefore accrued when the abuse occurred. The court

---

[6] In their amended complaint, Thomas and Susan alleged ten claims against the Diocese and St. Thomas. Some of the claims are difficult to identify and distinguish, and the parents' brief does not sufficiently clarify the nature of some claims. For ease of discussion, we have grouped the ten claims into the six described above, based on our understanding of the nature of the claims.

noted that the statute of limitations for personal injuries is three years, § 893.54, STATS. However, because the cause of action accrued when Joseph was a minor, the statute of limitations was tolled during his minority and he then had two years to bring the action.[7] Joseph turned twenty on June 2, 1990, and his claims, not filed until 1994, were therefore time-barred. The court concluded that Thomas' and Susan's claims were time-barred as well, because their "claims emanated from the same series of events giving rise to [Joseph's] claims . . . [and] the same statute of limitations applies to their derivative claims."

## DISCUSSION

We review summary judgments de novo, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Generally, summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

On appeal Joseph contends, as he did before the trial court, that he did not discover the causal relationship between his suffering and the assaults until 1994, and his claims did not accrue until that

---

[7] Section 893.16(1), STATS., provides:

Person under disability. (1) If a person entitled to bring an action is, at the time the cause of action accrues, either under the age of 18 years, except for actions against health care providers; or insane, or imprisoned on a criminal charge the action may be commenced within 2 years after the disability ceases, except that where the disability is due to insanity or imprisonment, the period of limitation prescribed in this chapter may not be extended for more than 5 years.

date, making the suit timely.[8] Thomas and Susan contend that their claims did not accrue until they discovered, or in the exercise of reasonable diligence should have discovered, the cause of Joseph's injuries, and that summary judgment is improper because there are factual disputes on their diligence in discovering their claims. Thomas and Susan point out their continuous efforts to seek professional help for their son to determine the cause of his suffering as evidence of their diligence in discovering their claims. Their position is that they did not, in the exercise of reasonable diligence, discover their claims until Joseph told them of the assaults in the spring of 1994 because it was not until then that they knew the cause of Joseph's suffering.[9] They argue, for reasons we discuss

---

[8] It is unclear whether Joseph means that summary judgment should have been granted in his favor on the statute of limitations issue, because there are no factual disputes and he is entitled to judgment as a matter of law on that issue, or whether he means that summary judgment in the Diocese's and St. Thomas's favor is improper because there are factual disputes concerning the date on which he discovered or reasonably should have discovered the causal connection between the abuse and his suffering. However, because we reject his legal theory on when his claims accrued, it is irrelevant whether there are factual disputes under that legal theory.

[9] Thomas and Susan also contend that until late 1994 they did not discover the conduct of the Diocese and St. Thomas in May 1984 and thereafter. They filed the amended complaint alleging claims arising out of this conduct on February 23, 1995. They cite to the amended complaint itself and their affidavits to support their contention that they did not learn until late 1994 of the conduct of the Diocese and St. Thomas in May 1984 and thereafter. However, their affidavits address when they learned Joseph had been assaulted, but not when they learned of the

in detail later in the opinion, that their claims are distinct from Joseph's claims and are not time-barred even if his are.

While this appeal was pending, the supreme court decided *John B.B.B. Doe*. The court held that the plaintiffs, who were minor victims of intentional and nonconsensual sexual acts by priests whom they knew, discovered, or in the exercise of reasonable diligence should have discovered, that they were injured at the time of the assaults and therefore their claims accrued at that time.[10] The court rejected the same argument that Joseph advances here—that the claims do not accrue until the victim knows that his or her emotional pain was caused by the assault. *John B.B.B. Doe*, 211 Wis. 2d at 343–44, 565 N.W.2d at 106. The court held where there has been an intentional, non-incestuous assault by one known to the plaintiff, and the plaintiff sustains actual harm at the time, the causal link is

---

conduct of the Diocese and St. Thomas that occurred in May 1984 and thereafter. An allegation in a complaint does not meet the requirements for materials properly considered in support of a motion for summary judgment. *See* § 802.08(3), STATS. However, for purposes of discussion we accept the assertion in their brief, since it is not disputed by the respondents and does not affect our analysis.

[10] Five of the plaintiffs in *John B.B.B. Doe*, like Joseph, remembered the assaults. Two plaintiffs alleged that they suppressed their memories of the assaults for a number of years. The court concluded that the claims of all the plaintiffs accrued when the assaults occurred, rejecting the contention of the two plaintiffs that their claims did not accrue until they were able to remember the assaults. *John B.B.B. Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 343–44, 565 N.W.2d 94, 106 (1997). We discuss this portion of *John B.B.B. Doe* later in this opinion.

established as a matter of law. *Id.* at 344, 565 N.W.2d at 106. While the plaintiff may not know the extent of his or her injuries at the time, the court said, accrual of a cause of action is not dependent upon knowing the full extent of one's injuries. *Id.* at 344, 565 N.W.2d at 106. The court declined to judicially extend the "specialized discovery rule" applicable to claims of incest, *see* § 893.587, STATS., to children who are sexually abused by priests or other non-related adults occupying positions of trust and authority over the children. *Id.* at 352, 565 N.W.2d at 110.

The *John B.B.B. Doe* plaintiffs asserted claims against the Archdiocese of Milwaukee and the various churches involved, as well as against the priests. Those claims, similar to those Joseph has asserted against the Diocese and St. Thomas, included negligent training, placement and supervision, failure to report and mitigate harm under § 48.981, STATS., and liability under apparent authority and respondeat superior. *Id.* at 319, 565 N.W.2d at 96. After concluding that the plaintiffs' claims for intentional assault against the priests were barred by the statute of limitations, the court held that the "derivative causes of action [referring to claims based on respondeat superior and negligent employment theories] against the Archdiocese and the churches accrued at the same time that the underlying tort claims accrued" and were similarly barred. *Id.* at 366, 565 N.W.2d at 115. With respect to the claim under § 48.981, the court, without deciding whether the statute permits a civil cause of action, stated that this claim was "merely derivative of the underlying intentional tort claims and [is] likewise untimely." *Id.*

*John B.B.B. Doe* requires that we affirm the dismissal of Joseph's claims against the Diocese and St. Thomas as time-barred. As a matter of law, Joseph discovered, or in the exercise of reasonable diligence should have discovered, the cause of his injury at least by the time of the last incident of assault, in May of 1984. *See John B.B.B. Doe*, 211 Wis. 2d at 342, 565 N.W.2d at 105. Therefore, his claims against the Diocese and St. Thomas as well as those against Father Trainor accrued no later than the time of the last assault. Joseph had to file those claims within two years of his eighteenth birthday, *see* § 893.16(1), STATS., and his failure to do so means they are untimely.

However, *John B.B.B. Doe* did not address the issue of the statute of limitations for the claims of parents arising from a sexual assault of their child. We now turn to that issue. Thomas and Susan advance these reasons that their claims are not governed by the statute of limitations applicable to Joseph's claims: (1) all of their claims are separate and distinct from Joseph's claims and not derivative; (2) unlike Joseph, they did not know the cause of his injury when the assaults occurred; (3) public policy favors protecting Thomas' and Susan's claims over protecting the Diocese and St. Thomas from suit because the Diocese and St. Thomas concealed their knowledge of Father Trainor's assaults from them; (4) the recent supreme court decision, *Estate of Cheryl Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997), supports protecting their claims; and (5) those claims for failure to report, investigate and inform do not arise from Father Trainor's assault of Joseph but from the Diocese's and St. Thomas's

937

conduct after being informed of Father Trainor's assaults of other boys.[11] Each of these arguments has merit. However, applying the method of analysis set forth in *Korth v. American Family Ins. Co.*, 115 Wis. 2d 326, 340 N.W.2d 494 (1983), and guided by the resolution of the competing policy considerations in *John B.B.B. Doe*, we conclude that Thomas' and Susan's claims accrued when Joseph's claim accrued, and the statute of limitations for their claims are the same as that for his claims.

■

When a child is injured, two causes of action arise against the negligent tortfeasor: the child's cause of action for the injury to the child, and the parents' cause of action for loss of aid, comfort and society, and companionship of the injured minor. *Shockley v. Prier*, 66 Wis. 2d 394, 404, 225 N.W.2d 495, 501 (1975). The child's cause of action and the parents' cause of action for invasion of the parents' interests are separate in the sense that each is predicated upon the invasion of different interests of different persons. *Korth*, 115 Wis. 2d at 331, 340 N.W.2d at 496. The parents' claim is derivative, however, in the sense that it arises from the same tortious act that inflicted injury on the child. *Id.* In a number of cases our supreme court has discussed the concepts of separate and derivative as applied to parents' claims and concluded that the parents' and child's causes of action are separate in certain respects and derivative in others. *Id.* However, when confronted

---

[11] We consider Thomas' and Susan's appellate briefs as well as their response to the Diocese's and St. Thomas' motion for summary affirmance. The ground for the motion for summary affirmance was the recent decision of *John B.B.B. Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94 (1997). We denied the motion by order dated July 29, 1997.

with a particular question involving the relationship between the parents' claims and the child's claims, labels of derivative or separate are unhelpful. *Id.* Rather, the court should examine the legal context in which the question about the parents' claims arises and make a decision that furthers the policies of the particular law at issue. *See id.* at 331–32, 340 N.W.2d at 496.

In *Korth,* the court considered whether the parents' claims for loss of society and companionship and medical bills were subject to the three-year statute of limitations for personal injury or to the statute tolling the child's claims during minority. The court first identified the policy underlying the statute of limitations—to ensure prompt litigation of valid claims and to protect defendants from fraudulent claims brought after evidence has been lost and memories faded—and the policy underlying the tolling statute for minors—to ensure that a minor did not lose rights because a guardian neglected to protect the minor's interest by bringing an action in a timely fashion. Next, the court applied these policies to the claims before it. It noted that, because the parents' claims must be combined with the child's, *see Shockley,* 66 Wis. 2d at 404, 225 N.W.2d at 501, the effect of making the three-year statute of limitations apply to the parents' claims would be that the child's claims also had to be brought within that time period, which might not be in the child's interest in a particular case. *Korth,* 115 Wis. 2d at 333, 340 N.W.2d at 497. As for the defendants' interests, the court concluded that they would not necessarily be additionally burdened by the longer statute of limitations for the parents' claims, because the defendants had to preserve evidence and maintain readiness to defend against the minor's claims in any

case. *Id.* The court also recognized that the parents' interpretation of the *Shockley* decision and the statutes was a reasonable one, and another interpretation would unfairly deny them access to the courts. *Id.*

The *Korth* court concluded that, while there were strong public policy reasons for the parents' and defendants' positions, the two statutes should be construed to allow the parents to file their claims during the period in which the minor could file his or her claims. *Korth,* 115 Wis. 2d at 333–34, 340 N.W.2d at 497. The Federal District Court for the Western District of Wisconsin applied the policy considerations identified in *Korth* and decided that our state supreme court would allow parents the benefit of the minor's tolling period for the parents' claim of negligent infliction of emotional distress arising out of the same negligent acts that caused the minor's injuries. *Carslon by Jendrzejek v. Tscopp-Durch-Camastral,* 755 F. Supp. 847, 850 (W.D. Wis. 1991).

We agree with Thomas and Susan that *Korth* does not dictate that parents' claims must always be subject to the same statute of limitations as the child's claims. On the other hand, we do not agree that *Korth* identifies as an overriding policy consideration the protection of the parents' claims. Rather *Korth* reached that particular result after identifying and weighing the various policies that were implicated in that particular context. We take the same approach here.

■

We begin by observing that the precise issue here is not, as in *Korth,* the proper statute of limitations for the parents' claims, but the threshold issue of when their claims accrued. However, the policy considerations behind the statute of limitations and the rules for accrual of claims are the same:

On the one hand, we are concerned with allowing tort victims a fair opportunity to enforce legitimate claims against wrongdoers. On the other hand, we are concerned with protecting defendants from having to defend against stale claims, where so much time has passed between the allegedly tortious act and the filing of the claim that witnesses and relevant evidence may be unavailable. Such deficits can preclude both the fair prosecution of claims and meaningful defenses. We are also concerned with preventing the prosecution of fraudulent claims. All of these considerations underlie statutes of limitations and ultimately promote efficient judicial administration.

*John B.B.B. Doe*, 211 Wis. 2d at 333–34, 565 N.W.2d at 102.

We now apply those policies to Thomas' and Susan's claims. Several considerations favor deciding that their claims accrued when they were told by Joseph in spring 1994 that he had been assaulted by Father Trainor, even though Joseph's claims accrued when the last assault occurred and are now time-barred. Following the holding of the court in *John B.B.B. Doe*, Joseph knew when the assaults occurred both the cause of the injury (including the identity of the perpetrator) and that he was injured, although he did not then know the extent of his injury. *See id.* at 344–45, 565 N.W.2d at 106. On the other hand, the parents, although aware of the injury and making efforts to determine its cause, could not know the cause until Joseph, or someone else, told them that Joseph had been assaulted by Father Trainor. If their claims accrued when the tortious acts occurred, the statute of limitations has run before they knew their son was assaulted. Their opportunity to enforce their claims is thus dependent, not on their own conduct (their

diligence in trying to discover the cause of the injury) but on the conduct of others, and, most particularly, on when their child reveals the occurrence of the assault.

Another consideration is that Thomas' and Susan's claims include claims that the Diocese and St. Thomas were negligent in not reporting and investigating Father Trainor's abuse of Tim M. and Brice M. and not informing the parents that Father Trainor assaulted other boys, or that Joseph had likely been assaulted by Father Trainor. Thomas and Susan argue that the Diocese and St. Thomas should not benefit from their own negligence, which they do if they avoid suit by breaching their duty to report, investigate and inform. Put somewhat differently, the argument is that it is unfair if Thomas' and Susan's opportunity to enforce legitimate claims against the wrongdoers can be defeated by the wrongful act itself—that is, by the failure of the Diocese and St. Thomas to report, investigate and inform.

Turning to the policy considerations on the other side, we start by recognizing that, according to the parents' position, their cause of action accrues when their son tells them of the assaults, assuming they have made diligent efforts to discover the cause of his injury. In this case, that was ten years after the last assault, but under their theory there is no limitation on how many years after the assault a parent's cause of action may accrue. We do not know, based on the current record, what prompted Joseph to tell his parents at this time in his life, but his parents' efforts over the years to discover the cause of his emotional sufferings did not result in him telling them. Accepting the parents' position means that the defendants in a case such as this are subject to suit indefinitely. Such an indefinite extension of the opportunity to assert a

claim greatly increases the difficulty of defending against claims and the risk of fraudulent claims.

Deciding that the parents' cause of action accrues whenever their son tells them of the assault is also difficult to reconcile with the reasoning leading to the court's conclusion in *John B.B.B. Doe.* In deciding that the five plaintiffs' cause of action accrued when the last assault occurred, the court considered the impact of the victims' ages on their ability to understand that they were the victim of a tort and had a cause of action. *John B.B.B. Doe*, 211 Wis. 2d at 348–49, 565 N.W.2d at 108. The court concluded that the minority tolling period adequately addressed this concern, tolling the statute of limitations until the child reaches adulthood and then providing an additional two years to comprehend the wrongfulness of the conduct, the harm it caused and the existence of a cause of action. *Id.* at 348, 565 N.W.2d at 108. Even though the plaintiffs failed to report the assaults or to recognize the wrongfulness of the assaults because of their trust and reverence for Catholic priests, the court held, they had a duty to diligently pursue potential claims. *Id.* at 350, 565 N.W.2d at 109. In other words, our supreme court has concluded that plaintiffs in Joseph's situation can reasonably be expected to disclose the assault before they are twenty. Although the parents' claim that they would have discovered the assault sooner if the Diocese and St. Thomas fulfilled their duty to inform them, it remains true that they would have known sooner had Joseph disclosed the assault sooner.

■

We recognize that parents may not have control over when their child tells them of an assault, and there is force to the argument that they should not lose the opportunity to seek compensation for their injuries

because their child did not disclose the assault sooner. However, the court in *John B.B.B. Doe* considered an analogous situation with respect to the two plaintiffs who had repressed their memories of the assaults, and nevertheless concluded that their cause of action accrued when the assaults occurred. We consider this analogous because these two plaintiffs claimed, and the court accepted as true for purposes of the decision, that they did not have conscious knowledge of the assault until after the statute of limitations had run. The court pointed out that delaying the accrual of their cause of action until they regained their memory would extend the tolling period indefinitely:

> Such an extension would increase the risk of fraudulent claims and severely undermine the statute of limitations. The Wisconsin legislature has already afforded some, but not all, of the limitations extensions afforded by other states. That legislative restraint, together with our balancing of the policies protecting plaintiffs' right to enforce legitimate claims and those protecting defendants from having to defend against stale or fraudulent claims, causes the balance to tip against judicially extending the applicable limitations period for these claims of repressed memory.

*John B.B.B. Doe* at 364–65, 565 N.W.2d at 115. The court concluded that it is contrary to public policy and defeats the purposes of the statute of limitations to allow claims of repressed memory to invoke the discovery rule and to indefinitely toll the statute of limitations for these plaintiffs. *Id.* at 364, 565 N.W.2d at 115.

In weighing the unfairness to plaintiffs of having the statute of limitations expire on their claims before they remembered them and could prosecute them,

against the unfairness to the defendants of being indefinitely exposed to such claims, our supreme court in *John B.B.B. Doe* concluded that the balance tipped in favor of the latter. This is a strong indication that our supreme court would find the balance in this case tipping against tying the accrual of the parents' claims to the date their son disclosed the assault to them.

The *Estate of Makos*, released one week before *John B.B.B. Doe*, does not suggest otherwise. The supreme court there decided that § 893.55(1)(b), STATS., a statute of repose that bars medical malpractice actions commenced more than five years from the date of the alleged act or omission without regard to the date of discovery, was unconstitutional as applied in that case.[12] *Estate of Cheryl Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 49, 564 N.W.2d 662, 664–65 (1997). The misdiagnosis of a growth as non-malignant occurred in 1985, but it was not until the plaintiff was diagnosed with metastatic malignant melanoma in 1994 that the earlier error was discovered. *Id.* at 48–49, 564 N.W.2d at 664. The court found the statute violated the plaintiff's constitutional rights because the statute of repose expired before she was injured by the alleged negligence (leaving untreated malignancy in her system) or could have proven an injury. *Id.* The court distinguished *CLL Associates v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 613–14, 497 N.W.2d 115, 118

---

[12] The constitutional provisions violated were the procedural due process clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Wisconsin Constitution which provides in part that "[e]very person is entitled to a certain remedy in the laws for all injuries. . . ." *Estate of Cheryl Makos v. Wisconsin Masons Health Care Fund,* 211 Wis. 2d 41, 52, 564 N.W.2d 662, 666 (1997).

(1993), which held that a contract cause of action accrues at the moment the contract is breached regardless of when the party knew or should have known the breach occurred, and also that there is no due process or Article I, Section 9 violation when the six-year statute of limitations expires before the plaintiff discovers his or her claim. The court in *Estate of Makos* stated that *CLL* involved a statute of limitations, which extinguishes an accrued cause of action after a period of time, not a statute of repose, which limits the time during which the cause of action arises. *Id.* at 51, 564 N.W.2d at 665.

Unlike the plaintiff in *Estate of Makos*, Thomas and Susan were not prevented from bringing their claims before they were injured or before they could have proven their injury. And although *CLL* was a contract action, it does instruct that accrual of a cause of action and expiration of the statute of limitations before a plaintiff discovers his or her claim is not a violation of either due process or Article I, Section 9. Thus, neither *Estate of Makos* nor constitutional considerations enter into our analysis of the proper outcome in this case.

We also consider whether any distinctions among the various claims asserted by Thomas and Susan affect our identification and weighing of the relevant public policies. We conclude they do not. Some of the claims allege injuries in the form of emotional distress suffered by the parents in addition to their loss of Joseph's society and companionship because of his suffering. However, all of the injuries the parents suffered are the result of the injuries to Joseph and

arise out of the same negligent acts that caused Joseph's injuries.[13]

It is also true that some of the alleged negligent conduct occurred before the assault and consisted of the failure to prevent the assault, and some negligent conduct occurred after the assault and consisted of the failure to mitigate the harm to Joseph and his parents resulting from the assault. However, all the negligent conduct caused injuries to Joseph. The court in *John B.B.B. Doe* held that the claims against the Archdiocese of Milwaukee and the churches, which included both claims for negligent conduct occurring before the assaults (negligent placement, training and supervision) and negligent conduct occurring after the assault (failure to report and mitigate harm) were barred by the statute of limitations because the underlying intentional tort was barred. *John B.B.B. Doe*, 211 Wis. 2d at 366, 565 N.W.2d at 115. Thus, the timing of the negligent conduct of the Diocese and St. Thomas in relation to the assault—whether before or after—does not affect when the child's claims accrue because it is when the assault occurs that the injury to the child first occurs. We see no reason why the timing of the negligent conduct in relation to the assaults should affect the accrual of the parents' claims based on that same negligent conduct.

---

[13] We note that the court in *Carlson by Jendrzejek v. Tscopp-Durch-Camastral*, 755 F. Supp. 847, 850 (W.D. Wis. 1991), applied the same analysis the court used in *Korth* for the parents' claim of loss of society and companionship to the parents' claim of negligent infliction of emotional distress "arising out of the same negligent acts that caused the child's injuries."

In summary, we conclude that our supreme court in *John B.B.B. Doe* enunciated a clear public policy against an indefinite extension of the statute of limitations and gave that policy decisive weight against those favoring the plaintiffs in circumstances that are similar in significant ways to the circumstances of Thomas and Susan. Although there are strong public policy reasons for holding that the parents' claims for injuries out of a non-incestuous sexual assault on their child accrue when they discover or in the exercise of reasonable diligence should have discovered that their child was assaulted, we hold that the parents' claims accrue on the date of the last assault of their child, the same date on which their child's claims accrue. We also hold that the statute of limitations and the minority tolling period that applies to their child's claims applies to the parents' claims. The trial court therefore properly dismissed the claims of Joseph and the claims of Thomas and Susan as untimely.[14]

---

[14] Thomas and Susan filed a motion with this court asking that we strike the arguments in the brief of the Diocese and St. Thomas that address issues other than the statute of limitations, specifically, that the parents' amended complaint does not state any claim for relief even if all the claims are not barred by the statute of limitations. We held that motion in abeyance. Because we have resolved this appeal on the statute of limitations issue alone, the motion is moot and we deny it on that ground. We emphasize that in discussing each of the claims for statute of limitation purposes, we are not deciding that the complaint states a claim for relief as to any claim.

*By the Court.*—Judgment and order affirmed.