[L.A. No. 32028. Nov. 12, 1985.]

I. J. WEINROT AND SON, INC., Plaintiff and Appellant, v.
MART BAILEY JACKSON et al., Defendants and Respondents.

328

## COUNSEL

Bernard S. Shapiro, Joseph W. Fairfield and Robert A. Fairfield for Plaintiff and Appellant.

Demler & Armstrong, James P. Spaltro, Lascher & Lascher and Edward L. Lascher for Defendants and Respondents.

## OPINION

**GRODIN, J.**—The principal question in this appeal is whether Civil Code[1] section 49, subdivision (c), gives a corporate employer a cause of action for damages resulting from injuries to a key employee caused by a third party's negligence. For the reasons stated in part II of this opinion we conclude that it does not. In part I we adopt with certain modifications the opinion of Justice Arguelles in the Court of Appeal, holding that the appeal was timely filed.

### FACTS

On August 18, 1982, I. J. Weinrot and Son, Inc. (plaintiff) was a closely held California corporation with Edwin Weinrot as its president, employee, and majority shareholder. At 11 p.m. that evening, while walking his dog, Weinrot was struck and injured by an automobile driven by Mart Bailey Jackson and owned by Benjamin M. Jackson (defendants).

On December 22, 1982, a complaint for damages was filed on behalf of Weinrot, his wife Irene Weinrot, and I. J. Weinrot and Son, Inc. In addition to causes of action seeking damages for Weinrot's personal injuries and Mrs. Weinrot's loss of consortium, the complaint contained a "Fifth Cause of Action," seeking corporate recovery for salary paid to Weinrot while he

---

[1] All further statutory references, unless otherwise noted, are to the Civil Code.

was unable to perform his usual duties, as well as lost business profits, and reimbursement for amounts paid for Weinrot's medical expenses.

The relevant portions of the complaint alleged that plaintiff was a duly organized California corporation, that Weinrot was the president and an employee of the corporation, and that plaintiff was contractually obligated to pay Weinrot's medical expenses and his salary whether or not he was able to perform his usual duties. The complaint further alleged that, as a result of defendants' negligence, Weinrot became unable to perform his usual duties as president of plaintiff corporation and incurred medical expenses which plaintiff was obligated to pay. In addition, it alleged that the corporation had lost profits as a result of Weinrot's inability to work.

Defendants filed a demurrer to plaintiff's complaint on March 1, 1983. By minute order entered April 8, 1983, the court sustained the demurrer.

On April 22, 1983, plaintiff filed a motion for reconsideration of the court's order sustaining the demurrer. The motion was denied on June 10, 1983, but the trial court took defendants' request for sanctions under submission. By minute order entered June 13, 1983, the court awarded defendants sanctions against plaintiff in the sum of $250.

On July 19, 1983, judgment was entered against plaintiff corporation on the order sustaining the demurrer without leave to amend; on July 25, a judgment was entered against plaintiff corporation on the order denying the reconsideration motion. This appeal followed.

## I.*

Before reaching the merits of this appeal, we address defendants' preliminary contention that the notice of appeal was not timely filed and the appeal, therefore, should be dismissed. Specifically, defendants argue that: (1) the time for filing an appeal from the trial court's order sustaining defendants' demurrer began to run on April 8, 1983, when the court entered its minute order, but the notice of appeal was not filed until August 8, 1983, more than double the 60-day period permitted for the filing of a notice of appeal under rule 2 of the California Rules of Court; (2) [] plaintiff failed to file the notice of appeal within 30 days of the order denying its reconsideration motion, as prescribed by rule 3 of the California Rules of Court and *Blue*

---

*In part I of this opinion, brackets together, in this manner [] without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material are, unless otherwise indicated, used to denote insertions or additions. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal.Rptr. 849, 444 P.2d 481], and cases cited.)

*Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1009-1010 [183 Cal.Rptr. 594]; and (3) the motion for reconsideration was [not timely filed and, in any case, was] not appealable because it was based on the same factual showing as was made in plaintiff's opposition to the demurrer. (*Blue Mountain Development Co.* v. *Carville, supra,* 132 Cal.App.3d at p. 1011.) We reject all of these arguments.

■ An order sustaining a demurrer without leave to amend is *not* an appealable order; only a judgment entered on such an order can be appealed. (*Jackson* v. *Teachers Ins. Co.* (1973) 30 Cal.App.3d 341, 343 [106 Cal.Rptr. 208]; see generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 64, p. 4078.) Such a judgment was entered here on July 19, 1983, and the time period for the filing of a notice of appeal commenced to run [only upon mailing of notice or service of notice of that entry.] (Cal. Rules of Court, rule 2.) Therefore, the August 8, 1983, filing of the notice of appeal was timely.

The issues of whether plaintiff was required to, and did in fact, comply with the time requirements for filing a reconsideration motion under Code of Civil Procedure section 1008, and whether the same factual showing was made in that motion as had been made previously, need not be considered here because the order denying reconsideration is nonappealable for a more fundamental reason. ■ "If the original ruling is not final and appealable in its own right, then it is not a judgment and an order denying reconsideration cannot be appealable. '[A]n appeal may not be taken from a nonappealable order by the device of moving to vacate the order and appealing from a ruling denying the motion.' (*Litvinuk* v. *Litvinuk* (1945) 27 Cal.2d 38, 43-44 [162 P.2d 8].)" (*Blue Mountain Development Co.* v. *Carville, supra,* 132 Cal.App.3d at p. 1010.) ■ However, that portion of the June 13, 1983, order awarding sanctions of $250 to defendants is appealable "because it is a final order on a collateral matter directing the payment of money. [Citations.]" (*O'Brien* v. *Cseh* (1983) 148 Cal.App.3d 957, 960 [196 Cal.Rptr. 409].) Therefore, only the order awarding sanctions and the judgment of July 19, 1983, are properly before this court on appeal. [We end our quotation from the Court of Appeal opinion at this point.]

## II.

■ Plaintiff's only asserted basis for its action is section 49, subdivision (c). Section 49, in its entirety, provides: "The rights of personal relations forbid:

"(a) The abduction or enticement of a child from a parent, or from a guardian entitled to its custody;

"(b) The seduction of a person under the age of legal consent;

"(c) Any injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation."

Plaintiff contends that this section affords a business employer a cause of action for damages caused by harm negligently inflicted upon its employees.[2] We do not agree.

Remarkably, although section 49, subdivision (c) codifies the common law and has existed in statutory form since 1872, this court has never before squarely confronted the question whether such a cause of action exists. To address this issue adequately, a somewhat detailed review of the history of section 49, its common law origins, and the decisions interpreting the statute is necessary.

Section 49 was originally enacted as part of the Civil Code of 1872. Section 5 of that code stated, "[t]he provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments." And, as we explained in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 814 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the purpose of the Legislature in enacting those sections of the 1872 Civil Code declarative of the common law was "to announce and formulate existing common law principles and definitions for purposes of orderly and concise presentation and with a distinct view toward continuing judicial evolution."

As originally enacted, section 49 read: "49. The rights of personal relation forbid:

"1. The abduction of a husband from his wife, or of a parent from his child;

"2. The abduction or enticement of a wife from her husband, of a child from a parent or from a guardian entitled to its custody, or of a servant from his master;

---

[2]Defendants did not explicitly urge failure to state a cause of action as one of its grounds for demurrer. Nevertheless, as is clear from the points and authorities accompanying the demurrer, the substance of defendants' pleading was that plaintiff had failed to state a cause of action. The record on appeal also reflects that the issue addressed by the parties and *decided* by the trial court was whether a corporate employer plaintiff could state a cause of action for damages under section 49, subdivision (c). The parties argue this question on appeal. Therefore, although the issue whether plaintiff's complaint stated a cause of action was not specifically raised in defendants' demurrer, we conclude that the merits of this question are properly before us on appeal.

"3. The seduction of a wife, daughter, orphan sister, or servant;

"4. Any injury to a servant which affects his ability to serve his master."

The statute's common law origins were indicated by the Code Commissioners' note immediately following section 49 in the 1872 code.[3] That note begins with a reference to the section of Book III of Blackstone's Commentaries discussing the common law causes of action for injuries affecting domestic relations.

That the commissioners' chief concern was with the regulation of *family* relations is made clear by the page reference given to Blackstone and by the comments and case citations following. The commissioners referred to pages 138 to 141 in Blackstone which address a husband's actions for adultery and the abduction or beating of a wife, and actions by parents and guardians for abduction or seduction of a child or ward. The commissioners made no reference to Blackstone's discussion of a master's action for injuries to his servant, which appears on pages 141-143. Similarly, the commissioners' comments and case citations were limited to explanations of subdivisions 1, 2, and 3 of section 49. No clarification of subdivision 4 appeared in the commissioners' explanatory material. Thus, it appears that the major objective of the Code Commissioners, and presumably of the 1872 Legislature, was to codify the common law actions for abduction or seduction of a wife or dependent, and, in subdivision 1, to add a cause of action unknown to the common law (see 3 Cooley's Blackstone (1st ed. 1870) pp. 143-144) for abduction of a husband or a parent.

Thus, subdivision 4 of the statute appears merely to codify the common law action for loss of services without comment or change. As Blackstone makes clear, this was an action in trespass based on the right to enjoy private property. In a persuasive analysis of the history of the common law action, the English court in *Inland Revenue Commissioners* v. *Hambrook* (1956) 2 Q.B. 641 (3 W.L.R. 643, 3 All Eng. 338) observed that "[i]n the Middle Ages, servants were regarded as property belonging to the master. If another man took them away, he could be sued in trespass just as if he took cattle."[4] By the 18th century, however, the action (*per quod servitium amis-*

[3]See Code Commissioners' note following 1 Annotated Civil Code section 49 (Haymond & Burch, 1st ed. 1872) page 25.

"In determining whether a specific code section was intended to depart from or merely restate the common law, weight is to be accorded the notes and comments of the Code Commissioners. [Citation.]" (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 817, fn. 10.)

[4]See also the discussion of the historical development of the master-servant relationship in Selznick, Law, Society and Industrial Justice (1969) page 123 et seq., as summarized in *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 319-320 [171 Cal.Rptr. 917].

*it)*[5] had "become confined to menial servants and apprentices, those who lived in the household as part of the family, for the very good reason that they alone could then be considered as the property of the master." (*Hambrook, supra,* at pp. 662-663.) In *Taylor v. Neri* (1795) 1 Esp. 386, 170 Eng. Rep. 393, for example, recovery was denied to a theater manager when defendant assaulted an actor and disabled him. Eyre, Chief Justice of the Common Pleas, expressed doubt that the court had ever gone further than to grant damages for injury to a menial servant, and explicitly distinguished between domestic servants and business employees in determining that no action would lie under the facts pleaded.

In the United States, too, the common law action was limited to recovery for injuries inflicted upon domestic servants. In *Burgess v. Carpenter* (1870) 2 S.C. 7, plaintiff sought recovery for economic damages sustained when defendant injured his hired ploughman. The South Carolina Supreme Court affirmed a judgment of nonsuit, reasoning: "At common law, in England, the master might bring an action for damages against a third party for any loss he might have sustained by reason of such party unlawfully injuring or interfering with his servant or servants; but this power, given the master, was only to be exercised toward menial servants—*domestics infra moenia.*" (*Burgess, supra,* at p. 9.)

It is apparent, therefore, that the common law codified in section 49, subdivision 4 provided recovery only for injuries to servants who were members of the master's household. The question remains whether this rule of the common law originally adopted by the 1872 Legislature has since been expanded in California, either by judicial interpretation or by legislative action. We conclude it has not.

In the six decades from section 49's enactment in 1872 to 1933, only two California cases mentioned subdivision 4. In *Boyson v. Thorn* (1893) 98 Cal. 578 [33 P. 492], this court considered a claim for damages based upon defendant's interference with a contract. Contrary to the weight of modern authority (see *Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 37-39 [112 P.2d 631]), the court held that there is in general no liability even for wilfully inducing a breach of contract unless threats, violence, fraud or other unlawful means are used. The court observed that "[t]o this general rule there are certain exceptions, as, for example, contracts for personal services involving the relation of master and servant. . . ." (*Boyson, supra,* at p. 580.) Specifically citing section 49, subdivision 4, the court stated, "[c]ases involving the relation of master and servant, though that relation

---

[5]"Whereby he lost the service [of his servant]." (Black's Law Dict. (4th ed. 1968) p. 1294.)

is now created solely by contract, seem to stand upon different grounds from contracts not involving that relation." (*Id.,* at p. 582.)

Again in 1917, this court alluded to section 49, subdivision 4 in *Earley v. Pacific Electric Ry. Co.* (1917) 176 Cal. 79 [167 P. 513]. There, the court held that a widow's wrongful death action had not been extinguished by her injured husband's agreement to release the defendant streetcar company from liability in return for its payment of his medical expenses. In explaining that the widow's damage claim was independent of the claim extinguished by her husband's agreement, the court used the following illustration. "A servant suffers wrongful and debilitating injuries at the hands of a third person. That third person is, of course, liable to the injured servant. The injured servant, however, compromises with the wrongdoer for the injuries which he has received and gives him a full release and acquittance. At the same time and by reason of the same single tort the master has his right of action against the wrongdoer for the loss of his employee's services. This was a right of action recognized at common law and is recognized by the statute law of this state. (Civ. Code, sec. 49.)" (*Id.,* at p. 82.)

It is clear that the discussions of section 49 liability in both *Boyson* and *Earley* are dicta, unrelated to the issues raised in either case. What is more significant here, however, is that there is no suggestion in either case that this court contemplated any broader application of the action than as described above under common law. Neither case suggests that the action was an appropriate means to compensate business employers for losses occasioned by injuries inflicted upon their employees.

In 1933, the Court of Appeal decided *Darmour Prod. Corp.* v. *H. M. Baruch Corp.* (1933) 135 Cal.App. 351 [27 P.2d 664]. In that case, plaintiff, a motion picture production company, sued for damages due to the lost services of the actress Ann Christy, allegedly injured by defendants' negligence. Defendants entered a demurrer on both general and special grounds and the trial court sustained the demurrer. On appeal, the judgment for defendants was affirmed on the basis that the complaint was defective for uncertainty in its allegations of damages. Nevertheless, in a discussion we have previously characterized as dictum (see *Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 162, fn. 4 [148 Cal.Rptr. 867, 583 P.2d 721]), the court, citing subdivision 4, concluded: "[W]e have no hesitation in holding not only that such right of action exists in California, but that the relationship of master and servant existed between the injured motion picture actress and plaintiff in the instant case." (*Darmour, supra,* at p. 353.)

The *Darmour* court's analysis of this point was brief and superficial. Although the issue whether such a cause of action existed under California law was a question of first impression, the court offered no discussion of the common law or of precedents from other jurisdictions. Nor did it consider the grave policy implications of subjecting a negligent tortfeasor to consequential damages for injuring a potentially irreplaceable business employee. No petition for hearing was presented to this court. And, as we have noted, the court's discussion of this issue was inessential to its decision. For the foregoing reasons, we disapprove *Darmour*'s dictum on this issue.

The history of section 49 does not end here, however. In 1939, the Legislature reenacted former section 49, subdivision 4 as section 49, subdivision (c). ■ Plaintiff relies upon the familiar principle that the reenactment of a statute in substantially the same language after it has been judicially construed gives rise to a presumption of legislative adoption of that construction (see, e.g., *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 369 [134 Cal.Rptr. 197, 556 P.2d 297], and see generally 58 Cal.Jur.3d, Statutes, § 110, pp. 492, 493, and cases cited there), and argues that, by this action, the Legislature incorporated the *Darmour* court's interpretation into the statute so that, regardless of its meaning before 1939, section 49, subdivision (c) now means what *Darmour* said it meant. We disagree.

The doctrine concerning the implied adoption of a judicial construction by reenactment of a statute is not without exceptions. Indeed, as Justice Frankfurter observed, "[t]he persuasion that lies behind that doctrine is merely one factor in the total effort to give fair meaning to language." (*Comm'n* v. *Broadcasting System* (1940) 311 U.S. 132, 137 [85 L.Ed. 87, 91, 61 S.Ct. 152]; see also *Fleming* v. *Moberly Milk Products Co.* (1947) 82 U.S. App.D.C. 16 [160 F.2d 259, 270]; *Yellen* v. *Hickel* (D.C.Cal. 1971) 335 F.Supp. 200, 207.) In light of the peculiar legislative history of this particular reenactment, it appears unlikely that the 1939 Legislature intended to incorporate the *Darmour* court's interpretation into the law.

Even a cursory review of the 1939 amendments indicates that the Legislature's purpose in amending section 49 had nothing to do with broadening the master's right of action for injuries to a servant. Rather, the goal was to conform the laws on the rights of personal relations to contemporary standards of conduct. Thus, section 49 was amended to eliminate the action for "the abduction or enticement of a wife from her husband." In addition, the cause of action for "seduction of a wife, daughter, orphan sister, or servant" was amended to forbid only "the seduction of a person under the age of legal consent." At the same time, a companion section (43.5) was added specifically to abolish causes of action for alienation of affections,

criminal conversation, seduction of a person over the age of legal consent, and breach of promise of marriage. (See Armstrong, *Recent California Legislation in the Law of Persons, Industrial Relations and Social Welfare* (1940) 28 Cal.L.Rev. 442, 442-445.) It is noteworthy that, as originally enacted, the amended version of section 49 *completely eliminated* subdivision 4 giving a master the right to recover for injury to his servant. (Stats. 1939, ch. 128, § 1, p. 1245.)

Governor Olson signed this amendment into law on May 10, 1939, but on May 12, sent a message to the members of the Legislature recommending that certain defects in the legislation be corrected. Most of the recommended changes had to do with other provisions of the legislation, but two paragraphs of the message are pertinent to this discussion.

The Governor wrote: "In addition it may be that further consideration should be given to the elimination of present subdivision 4 of section 49 of the Civil Code (effected by Assembly Bill No. 1699). [¶] In workmen's compensation cases an express right of subrogation is given to an employer for compensation paid by him to an employee for damages caused by a third party. However, all employment relations are not subject to the workmen's compensation law and it may well be that the effect of the removal of this subdivision will be more far reaching than was intended." (Governor's Recommendation to Assem. and Sen. that Assem. Bill No. 1699 be amended (May 12, 1939) 1 Assem. J. (1939 Reg. Sess.) p. 2086.)

The Governor's message is, unfortunately, somewhat cryptic. The "express right of subrogation" to which he referred is embodied in Labor Code section 3852, which grants to an employer who pays or who becomes obligated to pay workers' compensation or salary in lieu of compensation the right to bring an action directly against a third party tortfeasor. And in *Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d 157, we suggested that the Governor's message may have expressed a belief that retention of the master's cause of action under section 49 "was necessary in order to preserve an employer's right of subrogation under the workers' compensation law." (*Id.,* at p. 164, fn. 6.) In retrospect, that suggestion seems inaccurate.

The Governor's message clearly states that, where the workers' compensation law applies, employers are protected via the statutory right of subrogation against financial hardship caused by their obligation to support employees injured through the fault of third parties. It implies, however, that, since "all employment relations are not subject to the workmen's compensation law," certain other employers may not be so protected. In other words, repeal of the master-servant provision might deprive certain em-

ployers—not covered by workers' compensation law—their legal right to recover compensation paid to employees injured by third parties.

Which employers the Governor had in mind is difficult to fathom. In 1939, few, if any, private employers would have been obligated under collective or private labor contracts to pay salary or compensation to employees incapacitated by a third party. (See Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law* (1966) 54 Cal.L.Rev. 1478, 1478-1480, indicating that such agreements are of recent vintage.) Thus, it seems unlikely that many California employers would have been adversely affected by the repeal in the way the Governor's message suggests.

In 1939, however, the Governor's concerns were especially appropriate in one context. At the time of the Governor's message, no household domestic employees were covered by workers' compensation.[6] And, as one contemporary commentator, discussing the extension of workers' compensation coverage to domestic employees, observed, "[i]n the field of domestic service, the relationship between employer and employee is a very personal one. Accidental injury to a worker in the home brings a situation for which the employer can scarcely feel no moral responsibility." (Armstrong, *op. cit. supra,* 28 Cal.L.Rev. at p. 456.)

Here, then, was a situation in which an employer, though not insured by workers' compensation law, might pay salary or compensation to an employee injured by a third party. And, as previously discussed, this was also a situation in which the common law afforded the employer a right of action to recover from a third party tortfeasor. It is possible that the Governor's message intended merely to encourage continuation of the legal rights of recovery afforded to employers of domestic servants, since their employees had not yet come under the protection of the workers' compensation law. At any rate, it is notable that the Governor's message contains no citation to *Darmour* and no clear indication that he interpreted section 49, subdivision 4 to provide a right of action to all employers.

On May 25, 1939, apparently in response to the Governor's message, Assembly Bill No. 2843 was introduced, restoring section 49, subdivision 4, with appropriate limitations, as subdivision (c). This amendment was signed into law on July 25, 1939. We are aware of no other legislative material shedding further light on the Legislature's intent in reenacting this provision. Under these circumstances, and in the absence of any clear state-

---

[6]Workers' compensation coverage was first extended to domestic servants by the enactment of Labor Code sections 3352, subdivision (g), and 3358.5 (Stats. 1939, ch. 1043, § 2, p. 2874) approved by the Governor on July 23, 1939.

ment of legislative intent to incorporate the *Darmour* court's interpretation into the statute, we conclude the Legislature simply reenacted the statute as codified in 1872, with appropriate restrictions, to comply with the Governor's request that it not unintentionally curtail an action granted by prior law.[7] And, as we have seen, aside from a single reported intermediate court opinion, every indication is that that action was limited to recovery for injuries to menial or domestic servants.

No reported California decision since 1939 has held that section 49 provides an employer an action for harm to business employees. Although a number of cases cite the *Darmour* opinion, apparently with approval, all do so in the course of dicta incidental to the issues to be decided.[8]

Nor does this court's opinion in *Offshore Rental Oil Co.* v. *Continental Oil Co., supra,* 22 Cal.3d 157, support plaintiff's position. *Offshore* was a conflicts of laws case. Plaintiff, a California corporation, sued for injuries negligently inflicted upon a "key employee" in Louisiana. The trial court dismissed the complaint on the basis that, under Louisiana law, no such cause of action could be stated.

On appeal, this court affirmed the judgment of dismissal, concluding that the trial court's application of Louisiana law was correct. "For purposes of analysis," we assumed that California law, via section 49, "does provide an employer with a cause of action for negligent injury to a key employee." (*Offshore, supra,* at p. 163.) It is apparent that our opinion did not purport to decide this issue.

In addition, we observed that the expressions in California cases supporting the corporate plaintiff's position were "chiefly dicta" (*id.,* at p. 162),

---

[7]The dissenting opinion acknowledges that this conclusion is in accord with "what the law probably should be," but asserts that it "does not comport with what the law presently is." (*Post,* p. 341.) Rather, the dissent suggests, the Legislature intended by its reenactment of section 49, subdivision (c) "to provide a cause of action at least for employers who do not have 'an express right of subrogation' under the workers' compensation law." (*Id.,* at p. 343.)

But nothing in the *language* of section 49, subdivision (c) limits its application to such employers, nor does it limit recovery to the types of damage for which subrogation is otherwise available. To suggest that the Legislature *changed* the meaning of the statute in 1939, when it left the relevant language of the statute *unchanged,* seems to us far less plausible than the interpretation we adopt.

[8]See, e.g., *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 636 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Union Paving Co.* v. *East Del Paso Heights* (1963) 217 Cal.App.2d 772, 778 [31 Cal.Rptr. 915]; *Sharfman* v. *State of California* (1967) 253 Cal.App.2d 333, 336-337 [61 Cal.Rptr. 266, 36 A.L.R.3d 1370]; *Ventura County Employees' Retirement Association* v. *Pope* (1978) 87 Cal.App.3d 938, 953-954 [151 Cal.Rptr. 695]; see also *Standard Oil Co.* v. *United States* (9th Cir. 1946) 153 F.2d 958, affirmed (1947) 332 U.S. 301 [91 L.Ed. 2067, 67 S.Ct. 1604].

and that "California has itself exhibited little concern in applying section 49 to the employer-employee relationship: . . . no California court has heretofore squarely held that California law provides an action for harm to business employees, and no California court has recently considered the issue at all." (*Id.*, at p. 168.) We also noted that "the majority of common law states that have considered the matter do not sanction actions for harm to business employees." (*Id.*, at p. 167.)[9]

Furthermore, our opinion advanced several persuasive arguments why granting a corporate plaintiff a right of recovery in such a situation would be contrary to public policy. In interpreting the Louisiana Court of Appeal's view that to permit recovery for loss of a key employee's services would lead to "undesirable social and legal consequences (*Bonfanti Industries, Inc.* v. *Teke, Inc.* [La.App. 1969] 224 So.2d [15] . . . 17 [(affd. (1969) 254 La. 779 (226 So.2d 770)])," we explained that the phrase reflected a policy to "protect negligent resident tortfeasors . . . from the financial hardships caused by the assessment of excessive legal liability or exaggerated claims resulting from the loss of services of a key employee." (*Offshore, supra,* at p. 164.) We also noted that the plaintiff corporation was peculiarly able to calculate the risk of loss of services of a key employee and to protect itself against such a loss by securing key employee insurance. These observations are equally pertinent to the present case.

Plaintiff appears to concede that the doctrine for which it argues is obsolete, archaic and outmoded and that, as an instrument of social policy, it has no relevance to present-day employer-employee relationships. We agree. We note also that any legitimate objective which might be served by the adoption of a broad interpretation of section 49, subdivision (c) is already adequately protected by other features of modern California law.

We have already observed that employers covered under workers' compensation law have a statutory right of subrogation to recover compensation or salary paid to employees injured by third parties. Employers, like plaintiff, not subject to workers' compensation provisions who choose to provide their employees with contractually guaranteed benefits in the event of in-

---

[9]The extensive list of jurisdictions rejecting this theory of recovery appears at page 167, footnote 8. To this list should now be added *Hartridge* v. *State Farm Mut. Auto. Ins. Co.* (1978) 86 Wis.2d 1 [271 N.W.2d 598, 4 A.L.R.4th 495]; *Warth Paint Co., Inc.* v. *Jackson* (Fla. 1979) 368 So.2d 443; *Zawadzki* v. *Checker Taxi Co.* (N.D.Ill. 1982) 539 F.Supp. 207; *B. V. Merrow Co.* v. *Stephenson* (1980) 102 Mich.App. 63 [300 N.W.2d 734].

In addition, Georgia has recently decided that its statutory provision (cited in *Offshore* at p. 167, fn. 7) should be restricted to causes of action for *intentional* injury. (*Ireland Elec. Corp.* v. *Georgia Highway Exp., Inc.* (1983) 166 Ga.App. 150 [303 S.E.2d 497].)

capacity are presumably free to incorporate into their employment contracts a right of reimbursement should the injured employee eventually recover from a third party tortfeasor. (See *Block* v. *Cal. Physicians' Service* (1966) 244 Cal.App.2d 266 [53 Cal.Rptr. 51].) And, of course, the possibility of recovery for intentional interference with contractual relations (a theory of tort unknown at common law) provides for relief when the third party's conduct is calculated to disrupt the employer-employee relationship.

 For the foregoing reasons, we conclude that section 49, subdivision (c) does not provide a right of action for a corporate employer seeking recovery for expenses and lost profits incurred as a result of negligent injury to its employees. The judgment of the trial court sustaining defendant's demurrer is affirmed. The order of the trial court imposing sanctions is vacated.[10]

Broussard, J., Reynoso, J., Lucas, J., and Kaus, J.,* concurred.

**MOSK, J.**—I dissent.

While the majority's analysis determines what the law probably should be, it does not comport with what the law presently is.

Plaintiffs filed a complaint for damages arising from injuries sustained by plaintiff Edwin Weinrot at the hands of defendants. The complaint contained a cause of action asserted by plaintiff I. J. Weinrot and Son, Inc., Edwin Weinrot's employer, seeking recovery of salary paid to him while he was unable to perform his usual duties, reimbursement for amounts paid for his medical expenses, and lost business profits. This claim is based on Civil Code section 49, subdivision (c) (hereinafter section 49(c)), which gives an employer a cause of action for "[a]ny injury to a servant which affects his

---

[10]On plaintiff's motion for reconsideration, the trial court granted defendants' motion for imposition of sanctions in the sum of $250 pursuant to Code of Civil Procedure section 128.5. Section 128.5, subdivision (b) provides, in pertinent part, "An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order." The court's order imposing sanctions in this case cited no specific circumstances in justification. Although plaintiff's motion for reconsideration was not completely without merit, the court's decision to impose sanctions may have been based upon plaintiff's failure to comply with the statutory requirements of Code of Civil Procedure section 1008, subdivision (a). For this reason, we direct the court to vacate its order imposing sanctions and to reconsider this issue. If appropriate, the court shall prepare an order in compliance with the requirements of Code of Civil Procedure section 128.5, subdivision (b).

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

ability to serve his master . . . ." Edwin Weinrot's injury is not within the coverage of the workers' compensation law.

Under the well settled approach to the construction of statutes, section 49(c) would be interpreted to give any employer a cause of action for damages resulting from injuries to any of his employees caused by the conduct of a third party. Even if it is granted for argument's sake that the provision is an "antique statute" and "a law 'archaic and isolated in the context of the laws of the federal union'" (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 168 [148 Cal.Rptr. 867, 583 P.2d 721]), its language remains clear and unambiguous. "It is a settled principle in California law that 'When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656]; accord, *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) If the statute is believed to be unwise, comment should be directed to the Legislature, not to the court.

Even under the approach adopted by the majority, the employer should retain his cause of action. In the light of certain events that occurred in 1939, section 49(c) cannot properly be treated as merely the codification of the common law action *per quod servitium amisit.*

In that year, apparently to conform the laws governing personal relations to contemporary standards, the Legislature made changes in former section 49 and added a new section, Civil Code section 43.5, as a companion provision. Section 49 was amended to eliminate an action for "the abduction or enticement of a wife from her husband." In addition, the action for "seduction of a wife, daughter, orphan sister, or servant" was modified to forbid only "the seduction of a person under the age of legal consent." Section 43.5 was added specifically to abolish actions for alienation of affections, criminal conversation, seduction of a person over the age of legal consent, and breach of promise to marry. Most significant for our purposes, the Legislature completely eliminated the predecessor of section 49(c)— apparently concluding that both the common law rule and its premise that domestic servants were quasi-chattels did not suit contemporary views and conditions.

On May 10, 1939, Governor Culbert L. Olson signed into law the legislation amending former section 49 and adding section 43.5. (Stats. 1939,

ch. 128, § 1, p. 1245.) Two days later, however, he sent a message to the Legislature recommending that it correct certain defects he found in this legislation, including its elimination of the predecessor of section 49(c). He explained, "In addition it may be that further consideration should be given to the elimination of [this provision]. [¶] In workmen's compensation cases an express right of subrogation is given to an employer for compensation paid by him to an employee for damages caused by a third party. However, all employment relations are not subject to the workmen's compensation law and it may well be that the effect of the removal of this [provision] will be more far reaching than was intended." (Governor's Recommendation to Assem. and Sen. that Assem. Bill No. 1699 be amended (May 12, 1939) 1 Assem.J. (1939 Reg. Sess.) p. 2086.) By July 25, 1939, the Legislature had enacted and the Governor had signed section 49(c) in its present form. (Stats. 1939, ch. 1103, § 5, p. 3037.)

Precisely what the Legislature meant by adopting section 49(c) is difficult to determine. Yet it seems safe to conclude that it did not intend simply to reenact the common law rule. It is hard to believe that the Legislature so suddenly and radically changed its mind on the desirability of the common law action *per quod servitium amisit*—especially in view of the fact that the Governor's message, which was plainly the precipitating cause of the enactment, did not even mention the issue. Rather, the Legislature seems to have intended to provide a cause of action at least for employers who do not have "an express right of subrogation" under the workers' compensation law. This is the gap, the Governor pointed out, that was created by the elimination of the predecessor of section 49(c). The current version of section 49(c) was enacted in response to that message, and should therefore be read as filling the gap in question.[1]

In sum, although section 49(c) may not be treated as the mere codification of the action *per quod servitium amisit,* it should be taken at least as giving an employer a cause of action when he has no statutory right of subrogation. Because plaintiff I. J. Weinrot and Son, Inc., has no subrogation right, it has a cause of action under this statute.

---

[1]Substantially the same conclusion can also be reached by a different route. In *Darmour Prod. Corp.* v. *H. M. Baruch Corp.* (1933) 135 Cal.App. 351, 352-353 [27 P.2d 664], the court construed the predecessor of section 49(c) as providing any employer with a cause of action for damages arising from injuries to any of his employees caused by the conduct of a third party. In enacting section 49(c), the Legislature reenacted the very words of its predecessor. "[W]hen the Legislature enacts a law 'framed in the identical language' of a previous law on the same subject, it is presumed that the new law has the same fundamental meaning as the old law." (*State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 774 [144 Cal.Rptr. 758, 576 P.2d 473], quoting *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905].)

Although the foregoing conclusion may appear debatable as a matter of policy, it is mandated by the wording and history of the statute. I would reverse the judgment.

Bird, C. J., concurred.